Good morning. May it please the court. My name is Jim Phillips, and I represent Yakima Valley Memorial Hospital. With me today is Yakima Valley's CEO, Mr. Lenoway, and my partner, Casey Moriarty. The issue today is whether the district court was in error in dismissing Yakima Valley's complaint on a motion brought by the state pursuant to FRCP 12C that alleged that a recently passed CON, certificate of need regulation with respect to elective PCI procedures violated the Sherman Antitrust Act and the Dormant Commerce Clause. First, allow me to clarify the vegetables, the alphabet soup, excuse me, not vegetable soup, the alphabet soup that exists in this case, and I apologize for the acronyms that are floating around in the bowl before you. The first is PCI, that's percutaneous cardiac intervention. It's a fancy name for what I think probably troubles many families today, which is cardiac disease where they, it's a coronary procedure intended to treat the narrowing of arteries in the heart. Mr. Phillips, we've read the briefs which were very well written. I think we understand what the fight is over here. Okay, okay, so I'll go directly to the facts then. In 1971, Washington passed its first elective PCI regulation. In 1974, Congress passed the National Health Planning and Recovery Development Act, which I'll refer to as the NHPRDA, and that's the act which... We understand. Got it. That act provided funding for... And it got repealed. And it got repealed. Okay, so you've got two claims. You've got a Sherman Act claim, and you've got a preemption claim problem, and you've got dormant commerce clause, so... With that suggestion, Your Honor, I'm going to get right to the antitrust claim. Right. I had something else to say, but it sounds like you're with me. I understand. The antitrust act, the antitrust claim. We contend that the CON regulation with respect to elective PCI is a hybrid rather than a unilateral restraint, and we would direct this court to your opinion in Costco, where the ordinarily elusive cases that describe this type of area. The rule taken from those cases is that if a state statute creates unsupervised private power in derogation of competition, they're subject to preemption. What's the unsupervised power here? The state, as I understand it, licenses hospitals to provide this elective surgery, and it's the state that decides based on data which involves the number of treatments whether or not it will extend licenses to others within a particular geographic area. Is that correct? That's correct. Okay, so what's the unsupervised activity? The unilateral action of the state was to set it up. That's correct. Okay, and in Costco, the court was focused on agreements, some of which they found to be permissible, some not. Right. My understanding, counsel, is that essentially it's when it allows the private parties to get together and do what would otherwise be, and I think you're pursuing a section 1 type of case here, agreement amongst, I assume, something like a horizontal division of I think Sanders broadens that to any act that's against the Sherman Antitrust Act. I don't know whether your theory, though, is, I mean, it has to be the Sherman Act. It's either an agreement or restraint of trade or it's an act of monopolization. That's correct. Okay, so the state has allowed the hospital that is fortunate enough to get one of these licenses to expand or contract, I guess, its service volume to affect the data. Where's the antitrust activity, the unsupervised activity? It's just, it's a natural flow from what the state has authorized, which is, allows the licensed hospital to regulate its amount of activity. With all due respect, I disagree. Okay, I thought you might. Yeah, the enactment, the grant of the market power to the incumbent hospital is not what we focus on in terms of analyzing whether under Costco you have unsupervised private power, all right? What happened, in fact, if that were our complaint, Deke Pereira, Charlie's Taxi, A1, et cetera, would hurt us severely because those are grants to entities, franchises of a monopoly. But in my humble opinion, Your Honor, the only way to rationalize what you hold in Costco, that a grant of unsupervised private power and derogation, the only way to analyze whether that exists or not is to look at the regulation and determine, once you've given the CON, whether the private party has the power in combination in concert with DOH to continue in an unsupervised fashion to exercise private power, market power, as you described it in Sanders. But Mr. Phillips, if we agree that the unilateral action of the state has created a grant of monopoly to regional, then what violates the antitrust law if the monopolist behaves like a monopolist and continues to expand its hand? Right. The regulation, that's subsection 745, section 10, which is the need methodology, right? This is the mechanism by which, this is the heart of the CON regulation. If it were a CON regulation, Your Honor, that extracted, that took away from the incumbent hospital the ability to continue to manipulate these statistics in order to keep its exclusive territory, then we would have no complaint. But in this case, at the heart, the very core of this regulation, they give unsupervised power to the incumbent to continue to manipulate the inpatient, outpatient statistics of PCI. That's the natural consequence of having the monopoly. No, no it's not. You could have, you could determine what the CON was without giving them the power, unsupervised I might add, there's no supervision here, to continue to keep the exclusive territory. So what you want the regulation to say is not only must you get an initial certificate of need, but every time you want to expand the capacity to meet growing demand, you have to go back to the state, in essence, get an amended or a new certificate. No, no. I'm just saying that whatever mechanism, whatever methodology that you provide in your regulation for this exclusive territory, that you do not give the private party the unsupervised power to exercise market power to keep that monopoly. That's all I'm saying. All right. In other words, there are CON statutes throughout the Washington administrative regulations which do not give the private power, the private party the power to continue to manipulate the regulation to stay there and to exclude, exclude competition. I think that's the most important thing. In other words, there's no limit. Most of these involve exclusion of competition. I mean, that's the... Right. But in all due deference, Your Honor, most of them, and I think we cited some of them in our brief, do not give the party that's been granted the exclusive territory the power to continue to expand ad nauseum their capacity in order to manipulate the calculation of need to keep that exclusive territory. That's what's different here. It's a temporal, it's really an issue of where do you look at where is unsupervised private power being exercised? I'm sorry, go ahead. Before you run out of time, I really would like to hear your argument on the dormant commerce clause. I'll move to that immediately. All right. The test for a dormant commerce clause. The issue here is whether the NHPRDA authorized an impairment or impediment on interstate commerce. And the test is found in the Supreme Court case of South Central Timber Development. It's a 1984 Supreme Court case. And there they said you look for the congressional intent and policy to insulate state legislation from the commerce clause attack. It must be expressly stated. It either has to be expressly stated or it has to be unmistakably clear. It was expressly stated at the outset. Pardon? It was expressly stated, was it not? No. Before the federal legislation was then repealed? No. No. You can bet, Your Honor, Judge Fischer, that if they're going to find the best language for an authorization to violate interstate commerce, the best language they have, and it's quoted at ER 19 in the statute, it says, quote, only those health care services, facilities, and organizations found to be needed shall be offered or in respect, that's hardly an unmistakably clear or express delegation to the state to infringe on interstate commerce. It just doesn't exist. And in fact, if you look at the cases cited by the court, you can see cases where there is either unmistakably or express language which does direct the state to impede and interfere with interstate commerce. Or you find in the White case, Justice Rehnquist talking about market participation, that is if the OH participates in the market for elective PCI procedures, they could direct work to whomever they wanted. And I would also submit to you, if you want to see an example of express language, go to Western and Southern Life Insurance Code, the State Board of Equalization. That's a 1981 Supreme Court case. That's interpreting the McCarran Act. And there they said the states have the authority to regulate insurance and don't for a second think that silence on our part means that they don't have that power to intrude on interstate commerce. Now, those are cases, if you set that case on one side, that's Western and Southern, and you look at the best language they have from the NHPRDA, I'm sorry, but I don't see either an express or an unmistakable intent of Congress to allow states to impede and intrude on interstate commerce. Not to mention, and I will say this, but frankly, I think a statute which was repealed in 1986, that would be some 22 years before the 2008 PCI elective regulation at issue here, under any construct of statutory interpretation, once it's repealed, it's as if it never existed. And there is no savings clause in the act signed by President Reagan in 1986. So even before you get to authorization, you have to deal with the fact that what the district court did was basically invert the burden and placed it on us to prove that the repeal did not authorize or did not continue the authorization of the DOH to impede on interstate commerce. And it's simply not there. And it's also contrary to the rules that you should follow in FRCP 12C context, where inferences and facts should be in our favor. You want to save the rest of your time? Yes, sir. Okay, thank you. Good morning, and may it please the Court. My name is Mike Tribble. I'm an Assistant Attorney General for the state of Washington, and I represent the Health Certificate of Need Program. Here with me at council tables is Richard McCartan, also an Assistant Attorney General. The state's interest here is to promote patient safety by ensuring practitioners conduct enough heart procedures to keep their skills sharp. And as you pointed out in your questions to counsel, there are two main issues before the Court today. First, whether the heart procedure rules are immune from challenge under the federal Sherman Antitrust Act as unilateral actions of the state. And second, whether the rules are immune from challenge under the Dormant Commerce Clause of the United States Constitution, because Congress expressly authorized states to adopt certificate of need regulations. Okay, so you heard where we directed the argument of counsel, so why don't you dive right into rebutting, if you can, each of his points. First, that it's unsupervised action, which takes it outside the unilateral state, puts it into the hybrid category. And I draw your attention to this Court's jurisprudence in both Brown and Costco, citing Fisher versus City of Berkeley, that what constitutes a hybrid regulation is some sort of state delegation of its regulatory authority onto a private actor. And here we don't have that. We have... Private actor is basically, you know, shrinking and expanding, manipulating, as I think they put it, the number of procedures whenever they see competition on the horizon. What the certificate of need regulation here does is it allows, and we're talking specifically about the capacity calculation, it's a methodology that outpaces projected need. And this promotes quality of care, and at its most extreme application in a small county like Yakima, it's analogous to the granting of a monopoly. Yeah, it is. And this Court has... That's their complaint. And this Court has time... Allows you, rather than not you, allows the privileged licensee to prevent competition in the market, which would otherwise be there. In fact, as I understand it, Yakima is allowed to do these procedures on a need basis. This is all in the elective surgery, as I understand it. That's correct. Okay, so there is capacity that would enter, but for the restrictions that the state places on these potential entrants. It's a barrier to entry, which the licensee controls and can manipulate by adjusting the number of procedures it does. It's a barrier to entry that the certificate of need rule imposes. That's what they're complaining about. Right, and that is a unilateral action of the state. Well, but what's your response to the incumbent hospital that has the license is allowed unsupervised to manipulate, whether or not it really has a profit motive in proceeding to increase the treatments that it does. As long as it sees it needs to hit a bogey to prevent any competitor coming in, it doesn't have to take into account the cost-benefit analysis, other than just keeping out competition. And that option to grow is contemplated squarely within the language of the rule itself. That is the unilateral act of the state. And at its most extreme, it is akin to a monopoly, which this court has said over and over again, the granting of a monopoly by a state or a local municipality within a state is a unilateral action of the state. Here, there is no difference, except to the monopolist to open the market up to competition. By electing not to expand. By electing not to expand. That's correct. But why would any rational monopolist ever want to do that? Well, I don't believe they would. But again, the issue here is not whether or not the current market participants would choose to take advantage of the rule allowance itself, but the rule allowance. And if that's the case, then how does this regulation promote both patient safety and reduce health care costs? It promotes patient safety by ensuring that the current market participants can continue to expand, can continue to sharpen their skills. Well, what about Yakima? They're doing these procedures. But then patients, they don't get to do the elective to hone their skills. Certificate of need regulations are foreclosed from regulating emergent procedures. And so Yakima Valley Memorial Hospital is conducting the emergent procedures. But they're not able to meet the minimum volume standards. But isn't it the same cardiologists in Yakima who are doing both procedures at both hospitals? The record doesn't reflect that. This was an issue that was everybody does it at one place. Maybe it hones their skills better. How about the cost side of the equation? Well, and the physicians themselves are not the only participants. The hospitals put together workgroups. And every single part of the group that assists the physician to conduct these procedures need to keep their skills sharp. I'm still waiting to hear about the money. The allowance of the market expansion provides certainty within the market. And it ensures that in a small market like Yakima Valley, Yakima County, where there aren't going to be a high volume of procedures to ensure that multiple market participants are meeting the minimum volume standards, it meets both those public policy needs of ensuring patient safety, but at the same time, allowing the current participants to continue to grow, to have stability within the market. Okay, well maybe why don't you shift toward the Dormant Commerce Clause so we can find out what your response is on that. In the Wyoming versus Oklahoma United States Supreme Court case, the court set out that congressional authorization must be unambiguous to immunize a state law from attack under the Dormant Commerce Clause. Now, at the time, when do we look at that clear statement? Where's the clear statement that we looked at? The clear statement was the authorization that was embodied in the National Health Planning and Resources Development Act of 1974, where Congress set in motion the Certificate of Need requirements for the states. In that law, it says, such Certificate of Need programs shall provide that only those services, facilities, and organizations found to be needed shall be offered or provided in the state. Certificate of Need programs inherently impact interstate commerce. Okay, so we all agree with that. It does have an effect on interstate commerce, and therefore, absent that authorization, you would be violating the Commerce Clause. That is correct. If there was no... Okay, so now Congress comes along in 1986 and repeals that authorization. Why isn't that ipso facto end of clear authority to interfere with interstate commerce? The 1974 Act did more than programs. It mandated states create Certificate of Need programs to receive federal funds. Essentially, the federal government put 49 states in motion at that point in time. And for 12 years, there was momentum built up behind those programs. And in 1986, Congress repealed the original federal mandate. But at that point, Congress did not get communicated at all to the 49 states that they should cease activities related to Certificate of Need. But that's not the question, is it? The question is, you concede there was no savings clause in the 1986 Act, correct? That's correct. And your regulation didn't get promulgated until 2008. So what do we look at in 2008 in order to find express authorization for a this court, for any court in the United States? We're used to that. I'm sure you are. You look back to the 1974 authorization. But we have to treat it as if it never existed under the case law. If it's been repealed, it's like a ghost. It's evaporated. But there are certainly some lingering effects. That may be, but Counselor, you're representing a state that did not... Washington didn't have this regulation in place pre-repeal. Is that correct? This particular rule, no. Okay. So it's not as if you were invested in it because of 1974 and there's a savings or grandfathering. You have to look back to a repealed statute to find authority to burden interstate commerce, which you've acknowledged this restraint does. That is correct. And our position is that while the 1974 law was repealed in 1986, that 1974 law was the basis, not only the basis, but the mandate that states go out and put these programs together. Counsel, that begs the question. The mandate was withdrawn. The mandate was withdrawn and the law was repealed. It's nothing. It's not as if it didn't exist. Therefore, we have to look at the world as it exists, unless Congress, by expressed its intent, clearly, by putting in a savings clause. And I think with respect to the district court, the district court put the burden on the wrong party to find the clear statement. It said that Yakima couldn't come up with a clear rejection of it, but it's really your burden, I think the state's burden, to find the authority. And it's a little difficult to say, well, the state can reach back to a statute which Congress, a later Congress, comes along and repeals, along with a presidential statement which basically says, I'm all for the free market. That's the difficulty I'm having getting over that hurdle. I'm not suggesting that the state can't justify it, but, you know, because under interstate commerce, you know, litigation, you still have plenty of opportunity to argue public interest and lack of burden and so on and so forth. But why isn't the Commerce Clause issue a loser for you at this stage? Because of the, I believe that the best jurisprudence, the best conclusion that this court should reach is that the 1986 Act did not extinguish congressional authorization because states had invested significant resources. Give us a good case that when we write the opinion, we can say, we are relying on this Supreme Court case to write what you just said. That sounds like a trick question. No, I'm not being facetious. I mean, if we were to write an opinion, you say it's first impression, so we've got to write an opinion justifying our conclusion. And there is at least what counsel has provided us, a statement about the effect of a repeal. So what is the Supreme Court opinion, if there is one or maybe not be one, that says, but even though they repeal it without a savings clause, we can still say once they set the whole program in motion, new entrants, new states can come in and take advantage of it. There is no such Supreme Court case, but I would offer this distinguishing argument. Congress didn't ask for the money back that it granted in 1974. There was clear authorization, and Congress set in motion states to do certificate of need programs. But you're not a state that would be in a position of having to refund money or didn't have a opportunity to look at the landscape. That's why I said, if you were arguing, you were grandfathered in by some implication, but that's not the case. Don't we have to analyze this as, you're a new kid on the block, no disrespect to Washington, but you're coming in and deciding now to do it, but you're in a statutory state where the authorization that the other 49 states acted under no longer exists. Help us find some authority for that. The rules at issue today are the same rules that are adopted under the same authority that Congress adopted in 1986. And here's an example of language from the Washington Certificate of Need statute. In consideration of the findings made in national health priorities declared by the Congress in the National Health Planning and Resources Development Act of 1974, it is declared to be the public policy of the state and as essentially this, it's a law of physics. An object set in motion, stay in motion. And when Congress repealed the law in 1986, it stopped pushing states in a certain direction, but it didn't stop states. It didn't stop the authorization that it gave to states in 1986. I think that would be a perfectly logical argument if there were savings clause language that would authorize states to continue doing this. But if Congress repealed it and the president said the reason we're doing this is because our efforts to control health costs are a failure and we think that free market forces should do the job better, what is it that you can point to in 2008 that's still on the books that permits Washington to continue the Certificate of Need program when it impacts interstate commerce in this way? Nothing that is expressly on the books, only the absence of any stated intention by Congress. But if the law requires express authorization, then how can we rule in your favor in the absence of such express language? And we would point back to the existence of the express language. But it doesn't exist. You have a momentum argument, I understand. Okay, we take your point. And that brings up... You're over your argument time. You can understand. We have read these briefs. This is a very interesting case, so we do understand what the nuances are. But if there's something you think we need to know that hasn't been put in your briefs, finish up so we can go get back to our homework. Which brings us to our alternative argument on our cross-appeal, and that is that if the Certificate of Need rule is not immune under the Dormant Commerce Clause, Yakima Valley is simply not within the zone of interest protected by the Dormant Commerce Clause. Okay, that we know is in your brief, and we've considered that. We will and have. Thank you. Okay, thank you. Thank you. Just in rebuttal, a couple of points. We've talked about the clear, unmistakable statement of authority. And I would submit to you that it has to be a clear or unmistakable statement that it is okay for the states to burden interstate commerce. We've got that. Okay, because it's not there. In other words, just saying, oh, you can create CON regulations. That's not a... If that were the test for allowing states to burden interstate commerce, every statute, federal statute that mentioned any creation of any type of regulation or body would suffice. And it doesn't. It's got to be related. Now, on the repeal argument, I think by your questions, I sense that you see where our point is, which is that if something that was repealed in 1986 justifies something in 2008, it just doesn't make any sense to us. And I would just, with all due respect, suggest to you that there are a bountiful number of statutes which have been repealed over time. Some of them are repulsive going back into our history in terms of authorizing mistreatment of people, et cetera. Those can't possibly be authority. Well, that's not what he's arguing, counsel. What he's saying is that this one has applied to these facts, did in fact set in motion with a regime that covers the vast majority of states in the country. And all they did was step into a mix of activity that is hardly unique to Washington. So it's a little different than resurrecting the slave labor laws and Anti-Sedition Act and so on and so forth. I did hear the reference to the law of physics and pushing something. And I also didn't hear any authority for that proposition. And I don't think there is. And I would submit. And I think it's Newton's law, is it not? Yeah, I was just going to say, another role of physics is gravity pulls everything down. No offense. I have one question for you, and that's this. Assuming for sake of argument that we decide that the repealed statute is not such a clear authorization as to eliminate a dormant commerce clause question, we still could affirm if we thought the record supported that there's no valid dormant commerce clause claim, that is that the claim loses on the record. But I don't know, is the record not sufficiently developed to reach that question? In all due respect, Your Honor, I believe it is not. These motions were noted up right at the very beginning of the case. There's been no discovery, no motions for summary judgment, obviously, et cetera. So the issues of the substantive nature of whether we can prove a dormant commerce clause claim still exist and have been undeveloped. Okay. Counsel, thank you both. It's a very interesting and challenging case, and we do appreciate the argument. Thank you. Thank you. Thank you. We will stand in adjournment for the day, and resume tomorrow morning. All rise. This court for this session is now adjourned.
judges: Fisher, Gould, Tallman